**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IN RE:

|  |  |  |
|---|---|---|
| | : | Bankruptcy No. 05-13518-TPA |
| ANTHONY ROBERT FABRIZIO, | : | Chapter 7 |
| Debtor, | : | |
| | | |
| ANTHONY ROBERT FABRIZIO, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adversary No. 06-1041-TPA |
| | : | |
| U.S. DEPARTMENT OF EDUCATION | : | Related to Doc. Nos. 1, 9, 12, 14 |
| BORROWER SERVICES | : | |
| DEPARTMENT DIRECT LOANS, | : | |
| Defendant. | : | |

*Appearances:*      Jeff A. Connelly, Esq., for Debtor
                          Megan E. Farrell, Esq., for Defendant

## *MEMORANDUM OPINION*

Currently before the Court is the *Defendant's Motion for Summary Judgment* filed by the U.S. Department of Education Borrower Services Department Direct Loans ("Defendant") seeking dismissal of the Debtor's Adversary Proceeding filed pursuant to *11 U.S.C. §523(a)(8)* in an attempt to discharge a prepetition educational loan. For the reasons expressed below, the Defendant's Motion for Summary Judgment is granted since no genuine issue of material fact exists as to the central claim in this dispute.[1]

---

[1] This Court's jurisdiction was not at issue.

1

### *PROCEDURAL AND FACTUAL HISTORY*

On October 2, 2005, the Debtor, Anthony Robert Fabrizio ("Debtor"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  On February 14, 2006, the Debtor filed a "Motion" pursuant to *11 U.S.C. §523(a)(8)* seeking discharge of approximately $43,000 in consolidated, student loan obligations owed the Defendant, which "Motion" was thereafter amended.  On March 1, 2006, the Defendant filed its Response to the Amended Motion in the form of an Answer.  The Parties consented to treating the matter as an adversary proceeding.  On September 8, 2006, the Defendant filed its Summary Judgment Motion ("Motion") claiming the within dispute was capable of resolution as a matter of law.  On December 14, 2006, the Parties filed a Joint Statement of Material Facts.[2]  Thereafter, the Court entertained arguments on the pending Motion.

The Debtor is 51 years of age residing in an apartment located in Erie, Pa.  He owns no real property.  From 1984 through 1991, the Debtor obtained a number of subsidized Stafford loans as a means to fund his educational pursuits.  On January 16, 2004, the Debtor consolidated his outstanding loans into the William D. Ford Direct Loan Program creating a single, total obligation amounting to $40,583.00.  After consolidation, the monthly educational loan payments were fixed at $279.02.  The Debtor never made any payments on the consolidated loan.  As of March 12, 2006, the outstanding balance on the consolidated loan had grown to $42,898.78.

---

[2]    *Joint Statement of Material Facts*, Document No. 25.

In 1973, the Debtor obtained his high school degree from the Cathedral Preparatory School. In 1989, he received a B.S. in Management and Finance from Gannon University. The Debtor later took classes towards his MBA, but only completed approximately half of the requirements for that degree. In the last ten years, the Debtor has received professional certificates for education in communication, social studies and mathematics from the Commonwealth of Pennsylvania, as well as local certificates in sales consulting and for proficiency in various computer skills.

As of November 1, 2006, the Debtor obtained employment as a car salesman. As stipulated by the Debtor, his net earnings for the month of December, 2006 totaled $2,333.63.[3] Prior to that, from March, 2006, through the end of October, 2006, the Debtor was unemployed and during that period received monthly Pennsylvania unemployment compensation benefits in the amount of $1180. Before this recent period of unemployment, for all practical purposes, the Debtor was continuously employed for the prior eighteen (18) year period. The Debtor estimates his average annual income over the last ten (10) years approximated $30,000.[4]

The Debtor currently lives alone. Even though he has twice been married and divorced in 1994 and 2000, he has no current alimony or spousal obligations and there is no indication he has ever been required to make such payments. The Debtor is responsible for monthly

---

[3]      See Hearing Ex. B.

[4]      From 2004-2006, the Debtor was employed with ArriveTech, Inc. in the capacity of Senior Account Executive/Director of Marketing with an annual salary of $37,000. From 2002-2004, he was employed with the Manufacturers' Association of Northwest Pennsylvania as a manager of member services with a commensurate annual salary of $40,000. From 1998-2002, the Debtor was employed with John V. Schultz furniture and outlet company as manager with an annual salary of $30,000. While employed from 1996-1998 as a car sales consultant, he made approximately $30,000 in commission-based salary. From 1992-1996, the Debtor was employed as a car sales consultant from with two different companies and from 1988-1992 as a bar supervisor. No corresponding salaries are indicated in the record for these last positions.

3

child support payments totaling $364 for the care of his 13 year-old son and will be obligated to make those payments for the next five years until his son reaches the age of majority.

As of January 4, 2007, the Debtor incurred monthly living expenses of $1,188.[5] The Debtor managed to significantly reduce his expenses from those experienced during his previous six month period of unemployment. At the time of argument on the Motion, Debtor's Counsel contended that although *Hearing Ex. A* properly reflected his current expenses, Debtor's expenses were expected to increase now that the Debtor had obtained what appears to be regular employment. Also at the time of argument, and for purposes of resolving the pending Motion, the Defendant stipulated to the admission of *Exhibit A* to *Document No. 27* as appropriately reflecting the Debtor's current expenses. The Defendant did note for the Court that since the filing, the Debtor reaffirmed a $6,519 loan for a 1995 Cadillac Sedan DeVille with an estimated fair market value of $1,675 as co-signor "with a friend." The monthly payment for this obligation was itemized on *Hearing Ex. A* as $108 per month. At argument, through his Counsel, the Debtor stipulated that the Debtor was making the full payment since the vehicle was acquired for his personal use.

Finally, the Debtor admits he has no physical or mental disabilities or other personal limitations that would in any way impair his ability to maintain future, gainful employment.

### STANDARD OF REVIEW

The standard for determining a motion for summary judgment is set forth in *Fed. R.*

---

[5]     *Document No. 27, Hearing Ex. A.*

4

*Civ. P. 56*, which is made applicable to adversary proceedings through *Fed. R. Bankr. P. 7056*.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and

admissions that are part of the record, in addition to affidavits, demonstrate the absence of any

genuine issue of material fact thereby entitling the moving party to judgment as a matter of law.

*Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  Summary judgment is appropriate if no material, factual issue exists and the only issue

before the court is a legal issue.  *EarthData Int'l of N.C., L.L.C. v. STV Inc.,* 159 F.Supp.2d 844

(E.D. Pa. 2001); *In re Air Nail Co., Inc.,* 329 B.R. 512 (Bankr. W.D. Pa. 2005).  An issue of material

fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-

moving party.  *Dongelewicz v. First Eastern Bank*, 80 F.Supp.2d 339, 343 (M.D. Pa. 1999).  In

deciding a motion for summary judgment, the Court must view the facts in a light most favorable

to the non-moving party.  *United States v. Isley*, 356 F.Supp.2d 391 (D.N.J. 2004).  The moving

party, moreover, bears the initial responsibility of stating the basis for its motions and identifying

those portions of the record which demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 325.  Once the moving party satisfies its burden of establishing a *prima facie*

case for summary judgment, the non-moving party must respond with contrary evidence and do

more than raise some metaphysical doubt as to material facts, otherwise judgment will be entered

in favor of the movant.  *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d

538 (1986)).  No issue for trial exists, in fact, unless the non-moving party can adduce sufficient

evidence favoring it on the disputed factual issue such that a reasonable jury could only return a

verdict in its favor.  *See Celotex,* 477 U.S. at 322.  "It is important to note that, even if a genuine

factual dispute is shown to exist, such showing may not necessarily suffice to preclude the entry of

a summary judgment.  Indeed, the mere existence of *some* alleged factual dispute will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *In re Allegheny Health, Educ. and Research Foundation,* 321 B.R.

776, 789 (Bankr. W.D. Pa. 2005).  Also, where the movant is either the defendant or the party

without the burden on the underlying claim, as is the case here, the movant has no obligation to

produce evidence negating its opponent's case.  *In re Air Nail Co., Inc.*, 329 B.R. 512, 528 (Bankr.

W.D. Pa. 2005); *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1581-2 (3d Cir.

1992).

## DISCUSSION

As a general rule, discharge of a student loan indebtedness is not available to a debtor

seeking relief under the Bankruptcy Code.  However, an exception to this general rule is found in

*§523(a)(8)*[6] of the Code which provides in relevant part:

(a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
...
(8)    unless excepting such debt from discharge under this paragraph would impose an *undue hardship* on the debtor and the debtor's dependents, for–

(A)(i)    an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or ...

*11 U.S.C. §523(a)(8)* (emphasis added).

---

[6]    Unless otherwise indicated, all references in this Opinion are to the United States Bankruptcy Code, Title 11, *11 U.S.C. §101, et seq.* as it existed prior to October 17, 2005, the effective date of the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* (BAPCPA), P.L. 109-8, §256, 119 Stat. 23, *11 U.S.C. §101 et seq.*

While Congress did not specifically define the phrase "undue hardship" in the Bankruptcy Code,

the meaning of the "term" is "settled law" in the Third Circuit since the decision rendered in

*Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298 (3d Cir.

1996). In *Faish,* for purposes of *§523(a)(8),* the Court of Appeals for the Third Circuit adopted the

"undue hardship" test as originally set forth in *Brunner v. New York State Higher Education Corp.*,

831 F.2d 395 (2d Cir. 1987).[7]

Under this test, "undue hardship" requires a showing that: (1) the debtor cannot

maintain, based on current income and expenses, a minimal standard of living for himself and his

dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state

of affairs is likely to persist for a significant portion of the student loan repayment period; and (3)

the debtor has made good faith efforts to repay the loans. *Faish*, 72 F.3d at 304-5. Student loan

debtors bear the burden of proof in advancing a student loan discharge complaint. *In re Drumm*, 329

B.R. 23 (Bankr. W.D. Pa. 2005); *In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005). The standard

of proof by which a debtor must establish each of the elements is by a preponderance of the

evidence. *In re Allen*, 324 B.R. 278 (Bankr. W.D. Pa. 2005); *In re Brightful*, 267 F.3d 324 (3d Cir.

2001). Because the test is written in the conjunctive, if one of the three elements of the test is not

proven, the inquiry ends there and the student loan cannot be discharged. *In re Faish*, 72 F.3d 298

(3d Cir. 1995); *In re Brightful*, 267 F.3d 324 (3d Cir. 2001). Finally, the test must be strictly

construed. Equitable concerns or other extraneous factors not contemplated by the test may not be

---

[7]     Nine circuit courts of appeal have followed the *Brunner* test with respect to determining whether a debtor has proven undue hardship for purposes of a *§523(a)(8)* discharge. *State University New York - Student Loan Service Center v. Menezes*, 352 B.R. 8 (D. Mass. 2006).

imported into the "undue hardship" analysis. *In re Faish*, 72 F.3d 298 (3d Cir. 1995); *In re Brightful*, 267 F.3d 324 (3d Cir. 2001).

### Has the Debtor Made a Good Faith Effort to Repay the Loan?

Since resolution of this issue appears clear in light of the undisputed facts of this case, the Court will begin its analysis by examining the third prong of the *Brunner* test. Under this prong, the Debtor must prove that he has made a "good faith" effort to repay the loan over the entire time period from the date on which the first loan payment became due to the date on which the debtor filed his bankruptcy petition. *In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005); *Pelliccia v. U.S. Department of Education*, 67 Fed. Appx. 88 (3d Cir. 2003) (per curiam). The "good faith" inquiry is guided by the understanding that undue hardship encompasses a notion that the Debtor may not negligently or willfully cause his own default. Instead, his financial plight must be due to factors beyond his reasonable control. *In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005) (citing *In re Faish*, 72 F.3d at 305). This prong also fulfills the purpose behind the adoption of the *§523(a)(8)* student loan discharge provision of the Bankruptcy Code which was enacted in response to a "rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts." *In re Kelly*, 351 B.R. 45, 54-5 (Bankr. E.D.N.Y. 2006); *In re Wallace*, 259 B.R. 170, 179 (C.D. Ca. 2000).

In order for the Debtor to avail himself of the student loan discharge rights contained in *§523(a)(8)*, the Court is required to focus on the specific loan or loans sought to be discharged. *In re Clarke*, 266 B.R. 301, 307 (Bankr. E.D. Pa 2001). Here we are dealing with a consolidation

8

loan governed by the *Higher Education Act*, *20 U.S.C. §1074(a)*, which statutory language makes clear that "federal consolidation loans are new agreements which discharge the liabilities of the old loans and create their own obligations." *In re Clarke* at 307; *see In re Miller*, 2006 WL 2361819, at *3 (Bankr. W.D. Pa. Aug. 14, 2006). Acknowledging the foregoing at the time of argument, the Debtor stipulated that the relevant time period for consideration of whether a "good faith repayment" attempt occurred began with the January 16, 2004 loan consolidation date and ended with the October 2, 2005 petition filing date. *See In re Pelliccia v. U.S. Department of Education*, 67 Fed. Appx. 88, 90 (3d Cir. 2003) (per curiam) ("[a]ccordingly, we hold that a debtor seeking to discharge a student loan obligation on the ground that barring him from doing so would result in undue hardship must prove that he or she made good faith efforts to repay the loan over the entire time period between the date on which the first loan payment became due and the date on which the debtor filed for bankruptcy"); *In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005). During this time period the Debtor admittedly never made any payments toward his loan obligation. As such, the record is clear that the Debtor failed to make any attempt at paying his loan during the appropriate time period even though for all but six months of that time he was earning $37,000 in his position as a senior account executive/director of marketing. As such, without more, the Court is unable to find that the Debtor made any "good faith repayment" effort during the relevant time period.

A debtor's effort to seek out loan consolidation options that make the debt repayment obligation less onerous is an important component of the "good faith repayment" inquiry. Although not dispositive, it can support a finding that the Debtor takes his loan obligations seriously and doing his utmost to repay the loan despite the Debtor's unfortunate financial circumstances. *In re McNemar*, 352 B.R. 621, 624 (Bankr. N.D. W.Va. 2006); *In re Allen*, 324 B.R. 278 (Bankr. W.D.

9

Pa. 2005). Here the Debtor previously took advantage of his loan consolidation options which could be interpreted as indicating a recognition of the seriousness of his obligation to repay the loan. But any positive or beneficial inference gleaned from this isolated act was eliminated, or at least outweighed to such a degree as to become a non-factor, due to his contradictory, expressed reason for not making a payment even when he had the ability to do so, i.e., it would serve no purpose in reducing his obligation. Because of this admission, the only reasonable inference to be drawn is that the Debtor possessed no intention of repaying any portion of the consolidation loan during the relevant time period.[8]

The Debtor admitted in the *Joint Statement of Material Facts*[9] as reiterated at argument and in his brief, that since payment of the monthly loan amount "would not have resulted in the satisfaction of the loans over the life of the Plaintiff per his life expectancy" and that the remittance of the sum owed "would merely have resulted in the payment of continued interest accrual"[10] this justified his failure to make any repayment attempts during the relevant repayment period on the consolidated loan. The Debtor's personal belief as to the effect of payment is totally irrelevant on this issue. Even if relevant, the Debtor failed to substantiate his claim of "utter fruitlessness" by providing any evidence in the form of an amortization schedule, reference to life

---

[8]    At the very least, the $279.02 payment would reduce accumulating interest. Unfortunately, the Court is unable to even make this determination on the record before it since the Debtor failed to offer any evidence of the principal or interest portions of the payment, the term of the obligation, an amortization schedule, the effect of such a payment on the outstanding indebtedness, life expectancy table or any other means by which such an analysis could be made. As the party without the burden of proof, the Defendant has no obligation to produce evidence negating the Debtor's claim in this regard. *In re Air Nail Co., Inc.* 329 B.R. 512, 528 (Bankr. W.D. Pa. 2005).

[9]    *See* Debtor's "further response" to *Joint Statement of Material Facts*, Document No. 25 at ¶ 7.

[10]    *See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment*, Document No. 17 at 9. The short duration of the stipulated repayment period (only 21 months) caused the Court some initial concern as to whether the Debtor had been given a reasonable opportunity to establish this element of the "undue hardship" test. Although not the specific loan under consideration for purposes of determining the Debtor's good faith attempt at repayment, the Debtor did previously consolidate his outstanding loans. This event, when coupled with the 21 month repayment period, initially appeared to have some relevance to the "good faith" issue. However, in light of the Debtor's admission that no payment was intended on the current loan since it would essentially serve no purpose, the Court's initial concerns in this regard were dispelled for purposes of summary judgment.

expectancy tables, or otherwise.  Nor has the Debtor offered any legal authority in support of his bare, unsubstantiated assertions in this regard.

Likewise, the Debtor failed to support through affidavit, stipulation, discovery responses or any admissions of record that his condition or financial plight was due to factors beyond *his* reasonable control.  The Debtor admits that he suffers from no physical or mental disabilities affecting his ability to honor his loan obligation.  As such, he suffers from no adverse internal factors beyond his reasonable control which negatively impact his ability to make his loan payments.  The Debtor's argument in support of this element of the "undue hardship" test is based upon certain claimed "external" factors beyond his control allegedly due to the local market's "dismal" employment prospects which make his lack of employment, and therefore financial condition, "beyond his reasonable control."[11]  Once again the Debtor provides no record evidence impacting his ability to make payments and substantiating his claim.  No expert market analysis evidence was provided regarding the current state of the local economy.  Nor did the Debtor offer a personal affidavit in this regard.  Rather, he merely relied on unsubstantiated, broad statements to that effect in his brief.  Even assuming consideration of these "external" factors were relevant in analyzing the "good faith" repayment prong of the undue hardship test,[12] in deciding summary judgment motions, unsubstantiated arguments made in briefs or at oral argument do not constitute evidence for purposes of consideration.  *See Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) ("we have repeatedly held that unsubstantiated arguments made in briefs or at

---

[11]    *Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment*, Document No. 17 at 9-10.

[12]    The legal authority reviewed by the Court on this element of the "undue hardship" test discusses only "internal" factors beyond a debtor's control, i.e. physical or emotional disabilities and does not undertake any "external" factor analysis by reviewing the nature of local economies.

oral argument are not evidence to be considered by this Court"); *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) ("statements made in briefs are not evidence of the facts asserted); *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("[l]egal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion"); *In re Spring Ford Industries, Inc.*, 2005 WL 984180, at *6 (Bankr. E.D. Pa. Apr. 19, 2005) ("statements in briefs are not evidence); *Clements v. Diamond State Port Corporation*, 2004 WL 2223303, at *6 (D. Del. Sept. 30, 2004) ("[t]he Third Circuit has repeatedly held that unsubstantiated arguments made in briefs are not evidence to be considered by the Court"). "Vague" and "amorphous references" in the record "are insufficient to create a genuine issue of material fact on summary judgment." *Bocobo v. Radiology Consultants of South Jersey, P.A.*, 2005 WL 3158053, at *3 (D.N.J. Nov. 21, 2005). [13]

Finally, when evaluating "good faith," some courts have analyzed the ratio of a debtor's student loan debt to total debt to be discharged. *See, e.g.*, *In re Kelly*, 351 B.R. 45 (Bankr. E.D.N.Y. 2006); *In re Pobiner*, 309 B.R. 405 (Bankr. E.D.N.Y. 2004); *see also In re D'Ettore*, 106 B.R. 715 (Bankr. M.D. Fla. 1989) (to determine debtor's good faith, the court should examine whether the dominant purpose of filing was to discharge student loans and the ratio of the student loans to the total indebtedness). Here, upon review of the Debtor's Schedules, the Debtor's student loan debt constitutes approximately 80% of the original debt to be discharged. *Compare In re Kelly*,

---

[13]       At the time set for argument on the Motion, in response to the Debtor's allegations as to the local economic conditions negatively impacting the Debtor's potential job prospects, currently and in the future, Counsel for the Defendant represented that the 4.2% Erie County unemployment rate is actually the 203rd lowest unemployment rate when considering the nation's 367 largest metropolitan areas. The Court does note that based upon the U.S. Department of Labor Bureau of Labor Statistics the national unemployment rate for 2006 is 4.6% and based on those same statistics, the seasonally adjusted unemployment rate for Erie, PA in Dec. 2006 was 4.5%. Regardless, and for similar reasons, the Court is unable to consider the alleged facts as represented by the Defendant since not part of the current record. *See also Fed.R.Evid. 201* as to the proper manner for obtaining judicial notice of adjudicative facts.

351 B.R. 45 (Bankr. E.D.N.Y. 2006) (where the debtor's student loan debt constituted more than 70% of the debt sought to be discharged, the court found that the debtor failed to establish that she made good faith efforts to repay her student loans).  Such a high ratio of student loan debt in the instant matter in light of the undisputed facts before the Court further supports the conclusion that, under any scenario, the Debtor is unable to sustain his burden in establishing good faith pursuant to the third prong of the undue hardship test.  Therefore, since the Debtor is unable to meet the third prong of the *§523(a)(8)* "undue hardship" test, the entry of summary judgment in favor of the Defendant is appropriate.  *Celotex,* 477 U.S. at 322; *Boyle*, 139 F.3d at 393.

Since the *Brunner §523(a)(8)* undue hardship test requires all three prongs to be independently proven in order for its application to result in the discharge of a student loan obligation, because of the above finding, it is unnecessary to review the applicability of the remaining elements of the test.  Nonetheless, since alternate reasons exist in this case for the grant of summary judgment, further discussion is warranted.

*Is the Debtor's Financial Condition Likely to Persist?*

The second prong of the *Brunner* test, sometimes referred to as the "additional circumstances test," requires the Debtor to show that his current state of affairs will not improve for a significant portion of the student loan repayment period.  Courts considering this prong of the test have found it to be a "demanding requirement" since it is not enough for the Debtor to  prove financial straits or a "present inability to fulfill financial commitment."  *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001).  Rather, he must prove a total incapacity to repay the loan in the future for

13

reasons beyond the Debtor's control.  *In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005); *In re Brightful*, 267 F.3d at 328.  This prong requires definitive evidence that the Debtor's earning potential will not improve in the future.  *In re Greco*, 251 B.R. 670 (Bankr. E.D. Pa. 2000).  The heavy burden placed on the Debtor in sustaining the second prong effectuates the "clear congressional intent exhibited in *section 523(a)(8)* to make the discharge of student loans more difficult than that of other nonexcepted debt."  *In re Brunner*, 831 F.2d at 396.  In attempting to persuade the Court that his financial state of affairs is likely to persist for a significant portion of the student loan repayment period, the Debtor also failed to demonstrate any possibility of his success in this regard at trial.

The Debtor is well-educated.  In addition to obtaining his Bachelor of Science degree in Management and Finance, he has completed a significant portion of the required classes towards his Masters of Business Administration.  In the last ten years, the Debtor has received professional certificates from the Commonwealth of Pennsylvania for education in communication, social studies and mathematics, in addition to local certificates in sales consulting and for proficiency in various computer skills.  The Debtor clearly possesses an educational background that increases his marketability for obtaining future employment and would appeal to a wide array of prospective employers.  He also possesses extensive experience in sales and, specifically, automotive sales.  As of the date of the summary judgment argument he was employed as a car salesman with an annualized, gross income of $28,000 based upon his experience for the month of December, 2006.

In determining whether a debtor's present state of affairs is likely to persist for reasons over which he has no control, courts typically give great weight to demonstrated physical,

mental, emotional and/or psychiatric disabilities or impairments preventing one from working. *See, e.g., In re Brightful*, 1999 WL 1024516, at \*2 (Bankr. E.D. Pa. Nov. 08, 1999); *In re Kelly*, 351 B.R. 45, 54 (Bankr. E.D.N.Y. 2006). Here, the Debtor acknowledges that he possesses no physical or mental conditions which would interfere with his ability to maintain his previous or current standard of living. His ability to seek out and retain gainful employment has not been hampered in any way by poor health or medical, emotional or physical impairments. *See In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005).

In an attempt to demonstrate support enabling him to meet his burden of proof under the second prong of the undue hardship test, the Debtor again maintains the state of the local economy is such that employment prospects are indefinite and bleak. The Debtor notes in his brief, for instance, that opportunities for employment in the car sales business are not promising given the "wide ranging institutional difficulties experienced by American car dealers." Such an assertion could conceivably be construed as a "reason over which the Debtor has no control." However, the fact the Debtor recently obtained and is currently employed as a car salesman earning an annual salary projected in the $28,000 range, runs counter to the notion that appropriate employment opportunities do not exist in that arena. But most importantly, the Debtor has offered no proof substantiating the apparent, blind assertions set forth in his briefs regarding the state of the local economy. As previously noted, vague and unsubstantiated claims and arguments made in briefs are not evidence and do not create a genuine issue of material fact for purposes of denying the grant of summary judgment. *See, e.g., Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) ("we have repeatedly held that unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court"); *Bell v. United Princeton Properties, Inc.*, 884 F.2d

15

713, 720 (3d Cir. 1989); *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103,

1109-10 (3d Cir. 1985); *In re Spring Ford Industries, Inc.*, 2005 WL 984180, at *6 (Bankr. E.D. Pa.

Apr. 19, 2005); *Bocobo v. Radiology Consultants of South Jersey, P.A.*, 2005 WL 3158053, at *3

(D.N.J. Nov. 21, 2005); *Clements v. Diamond State Port Corporation*, 2004 WL 2223303, at *6 (D.

Del. Sept. 30, 2004).

      Nor can the Debtor rely on his age of 51 years as a discharge basis.  The simple fact

the Debtor will have to pay his educational loans later into life is merely a consequence of his

decision to incur debt for educational purposes during his thirties.  *See Educational Credit Mgmt.*

*Corp. v. DeGroot*, 339 B.R. 201, 212 (D. Or.  2006) ("where debtors choose to incur educational

debt later in life, the fact that they will reach retirement age during the loan repayment period is not

enough alone to justify discharge..."); *see also In re Chapelle*, 328 B.R. 565, 572 (Bankr. C.D. Cal.

2005) ("[the debtor's] age does not constitute an 'additional circumstance,' especially when she is

healthy and does not suffer from any age-related illnesses that affect her ability to work").

      Resolving all inferences from the present record facts in his favor, the Debtor's

extensive and continuous work history greatly enhances his employment opportunities making it

"likely" that his recent unemployment situation will not persist into the future.  And if it does, it is

unlikely that it will endure for any significant period of time.  As noted, the Debtor is currently

employed as a car salesman.  Prior to his current job, and but for the intervening, recent period of

brief unemployment, the Debtor acknowledges he had been employed "almost continuously for at

least the last eighteen (18) years."[14]  Such experience in a variety of fields has rewarded the Debtor

with a multitude of skills that expands his employment opportunities strongly rebutting any claim

that he experiences a "total incapacity in the future to repay the loans."

      For all the above reasons and resolving all reasonable inferences of fact in favor of

the Debtor, the Court finds that, as to the second prong of the undue hardship test, the Debtor has

failed to demonstrate any ability to satisfy his burden of proof at trial.   No relevant additional

circumstances have been demonstrated that the Debtor's state of financial affairs is likely to persist

for a significant portion of the student loan repayment period.   As such, summary judgment is

appropriate in this regard as well.   *Celotex*, 477 U.S. at 322.

      Now that it has been determined that the Debtor failed to sustain his independent

burden of proof as to two separate prongs of the "undue hardship" test, there is no need for the Court

to go any further prior to entering summary judgment in favor of the Defendant.   Despite these

findings, because the Debtor focused his argument for compliance with the requirements of the

undue hardship test on the first prong of the test, almost to the exclusion of all else, the Court

believes it appropriate to comment on the Debtor's ability to maintain a minimal standard of living

if forced to repay the student loan.

### *Can the Debtor Maintain a Minimal Standard of Living?*

      The first prong of the *Brunner* undue hardship test requires the Debtor to also prove

---

[14]    With respect to the Debtor's unemployment period from March, 2006 through September, 2006, courts have been clear that a mere lack of employment, especially for a short duration, is not enough to satisfy the second prong of the *Brunner* test. *See, e.g., In re Cehula*, 327 B.R. 241 (Bankr. W.D. Pa. 2005); *In re Raymond*, 169 B.R. 67 (Bankr. W.D. Wash. 1994).

17

at trial that he cannot maintain a minimal standard of living based on his current financial condition if forced to repay the subject loans. *In re Faish*, 72 F.3d at 306. This test requires the Court to evaluate the Debtor's present income and expenses and determine "a flexible minimal standard of living level sensitive to the particular circumstances of each case through the application of common sense." *In re Kelly*, 351 B.R. at 53; *In re Porrazzo*, 307 B.R. 345, 348 (Bankr. D. Conn. 2004). A mere showing that the Debtor's finances will be "tight" will not suffice. *In re Faish*, 72 F.3d at 306; *In re Cehula*, 327 B.R. at 245.

The undisputed facts offered by the Parties demonstrate that the Debtor's net pay for the month of December, 2006 totaled $2,333.63.[15] The Debtor's monthly expenses for that time period totaled $1,188.[16] Therefore, the Debtor's monthly expenses for December, 2006, exceeded his monthly income by $1,145.63. Based on this "snapshot" approach of income and expenses for the month of December, 2006, it is clear that the Debtor could maintain a minimal standard of living if forced to repay his consolidated loan at the rate of $279.02 each month.

The Court realizes that due to the cyclical nature of the Debtor's current employment as a car salesman and that his take-home pay is commission-based, the Debtor's December, 2006 income may not necessarily represent or accurately portray his future income. By the same token, based on the current state of the record, the Court also has no reason to believe that December, 2006 was anything but a "typical" month for the Debtor in terms of his salary and commission now that his sales position is established. The Debtor provided no contrary proof in the record. At argument,

---

[15]    *Hearing Ex. B.*

[16]    *Hearing Ex. A.*

Debtor's Counsel merely claimed that the Debtor's December income figure may not be indicative of "typical" monthly income.

In arguing for entry of summary judgment under this prong of the *Brunner* test, the Defendant contends that the Court should use a "snapshot" of the Debtor's income for December, 2006 when determining his "current" income, it being the last full month of reported income prior to the summary judgment hearing.  In support of its position, the Defendant relies on a number of cases allegedly standing for the proposition that courts should look to a debtor's income solely at the time of trial or summary judgment hearing.  *See, e.g., Brunner v. New York State Higher Education Corp.*, 831 F.2d 395 (2d Cir. 1987); *In re Faish,* 72 F.3d 298 (3d Cir. 1995); *In re Brightful*, 267 F.3d 324 (3d Cir. 2001).

We believe the Defendant's reliance on cases authorizing the "snapshot" approach to be somewhat misplaced.  First, from a procedural standpoint, all cases referenced by the Defendant were before the respective court for decision after the time of trial and not, as in the present case, at the summary judgment stage.  Moreover, the cited authority is also distinguishable on a factual basis.  The debtors in all instances earned a regular, fixed income for substantial time periods with no indication of interruption of that income on a going forward basis.  Such is not the case here.  The Court instead is faced with a debtor earning a commission-based salary.  The matter is further clouded by the fact that the Court has only three months of income/expense figures to evaluate in considering his income, with the last month being the only month producing any significant disposable income.  As such, a determination of the first prong of the undue hardship test involves consideration of a somewhat "moving target."

19

Because of the particular facts of this case, it appears that resolution of the first prong of the *Brunner* test may not be ripe for summary judgment determination. Nevertheless, because the Court has previously determined that the Debtor is incapable of meeting his burden of proof at the time of trial as to prongs two and three of the test, summary judgment in favor of the Defendant is appropriate. *See, e.g., In re Faish*, 72 F.3d at 306-7; *In re Brightful*, 267 F.3d at 327-8.

## CONCLUSION

For the foregoing reasons, the *Defendant's Motion for Summary Judgment* is granted and the Debtor's adversary proceeding seeking discharge of his student loan obligation pursuant to *11 U.S.C. §523(a)(8)* is dismissed. Although summary judgment may not be appropriate in regards to the first prong of the *Brunner* test, based upon the record before the Court, and resolving all reasonable inferences in favor of the Debtor, there is no material dispute of fact regarding the Debtor's inability to present sufficient evidence at the time of trial to sustain his independent and separate burdens of proof as to the remaining prongs of the undue hardship test.

An appropriate Order will be entered.[17]

Dated this **25**[th] day of **April, 2007**

Thomas P. Agresti
U.S. Bankruptcy Judge

Case Administrator to Serve:
    Debtor
    Jeff A. Connelly, Esq., for Debtor
    Megan E. Farrell, Esq., for Defendant

---

[17]    This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: | : | Bankruptcy No. 05-13518-TPA |
| ANTHONY ROBERT FABRIZIO, | : | Chapter 7 |
| Debtor, | : | |
| | : | |
| ANTHONY ROBERT FABRIZIO, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adversary No. 06-1041-TPA |
| | : | |
| U.S. DEPARTMENT OF EDUCATION | : | Related to Doc. Nos. 1, 9, 12, 14 |
| BORROWER SERVICES | : | |
| DEPARTMENT DIRECT LOANS, | : | |
| Defendant. | : | |

### ORDER OF COURT

**AND NOW**, this *25th* day of *April, 2007*, for the reasons expressed in the accompanying Memorandum Opinion entered this date, it is hereby **ORDERED, ADJUDGED and DECREED** that the **Defendant's Motion for Summary Judgment** filed by the Defendant, *U.S. Department of Education Borrower Services Department Direct Loans,* is **GRANTED** and the adversary proceeding filed by the Debtor, *Anthony Robert Fabrizio,* is **DISMISSED,** with prejudice.

Thomas P. Agresti
U.S. Bankruptcy Judge

cc: Case administrator to serve:
    Debtor
    Jeff A. Connelly, Esq., for Debtor
    Megan E. Farrell, Esq., for Defendant